UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PLANNED PARENTHOOD SOUTHWEST OHIO REGION,** et al, | : : : : | Case No. 2:15-cv-3079 |
| | | **Judge** |
| Plaintiffs, | : : : | **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT** |
| vs. | : : | |
| RICHARD HODGES, | : : | |
| Defendant. | | |

Pursuant to Fed. R. Civ. Pro. 65, Plaintiffs hereby move for a temporary restraining order and preliminary injunction prohibiting the Defendant from enforcing O.R.C. § 3701.341 and O.A.C. § 3701-47-05 as applied to the disposal of fetal tissue by the ambulatory surgical facilities operated by Plaintiffs. A proposed order is attached.

Notice will be provided to Defendant. Plaintiffs request that bond be set at $1.00 or be waived.

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

Since 1974, Ohio has required that fetal tissue be disposed in a "humane" manner and Plaintiff abortion providers have always abided by that directive as well as all regulations regarding disposal of fetal tissue, and, upon information and belief, have never been cited by the Defendant for violating those regulations. However, on Friday, December 11, 2015, Plaintiffs were accused of violating the fetal tissue disposal rule and advised that an injunction would be pursued by the Defendant in state court on December 14, 2015. Plaintiffs learned of this supposed violation through a letter issued by Attorney General DeWine's office on Friday

1

morning and of the lawsuit from a press conference he held that afternoon. Plaintiffs did not hear from the Ohio Department of Health about this until Plaintiffs reached out, and they have had no notice or opportunity to be heard on these charges before facing the extreme remedy of an injunction. Defendant has abandoned his standard process of providing notice of alleged non-compliance and providing an opportunity to submit a plan of correction through administrative procedures.

Plaintiffs, like all medical providers who dispose of fetal tissue, have always been held to comply with the laws and regulations for disposal for infectious materials. But now for the first time, Defendant has arbitrarily singled out Plaintiffs and claims that their actions in *following* infectious waste rules nonetheless *violates* the fetal tissue rule. This sudden and targeted treatment is no doubt motivated by his animus to a woman's right to safe and legal abortion and to Planned Parenthood in particular. Plaintiffs therefore challenge the fetal tissue requirement as void for vagueness and subject to arbitrary enforcement and challenge Defendant's actions as a violation of their right to equal protection of the laws. Plaintiffs seek a temporary restraining order to preserve the status quo and enjoin Defendant from enforcing the requirements for disposal of fetal tissue as applied.

## II. STATEMENT OF FACTS

In 1974, Ohio passed a law that required that the Director of the Ohio Department of Health to adopt rules regarding the, "Humane disposition of the product of human conception." R.C. § 3701.341. In 1975, the Director issued OAC § 3701-47-05 which requires that, "The fetus shall be disposed of in a humane manner." The regulation has never been amended or changed during the past 40 years. Fetal tissue disposal is also subject to regulation as infectious

waste under O.A.C. §3745-27-30 (standards for generators of infectious wastes); O.A.C. § 3745-27-32 (standards for the operation of infectious waste treatment facilities).

In 1995, Ohio passed a law requiring ASFs to obtain a license from ODH. Every year Plaintiffs are inspected by ODH for compliance with ODH's regulations, including regulations regarding disposal of fetal tissue. The standard process ODH uses to address alleged compliance deficiencies starts with a notice of the deficiency which states the rule that is in question; the facts, including witness names and documents reviewed; and provides a reasonable time for the facility to create a plan of correction. If the facility submits an acceptable plan of correction within the time provided, ODH sends written confirmation that the deficiency is cured. None of this has occurred here.

Plaintiffs dispose of fetal tissue in a manner that complies with the fetal tissue disposal laws and in a manner that also fully complies with the infectious waste regulations. Specifically, Plaintiffs have contracted with approved certified medical waste company which was obligated to dispose of the material in a manner consistent with all state and federal laws. Upon information and belief, all of those contracts invoices, receipts and verifications have been available to Defendant for review.

Prior to December 11, 2015, Defendant has, upon information and belief, never before indicated that the disposal methods employed by Plaintiffs failed to comply with the fetal tissue disposal regulation. On the afternoon of December 11, 2015, Plaintiffs received notice through the media that ODH will sue PPSWO and PPGOH for an injunction on Monday December 14, 2015, for allegedly violating the fetal tissue disposal regulation.

Press statements by the Ohio Attorney General that day arbitrarily accused Plaintiffs, without explanation or evidentiary support, of violations that had never been raised with them.

3

These actions interfered with Plaintiffs' contractual relationships with the medical waste vendor used by both Plaintiffs, causing the vendor to immediately cancel its contracts with the Plaintiffs. Appropriate alternative arrangements are being made, but Plaintiffs stand at risk of repeated use of these heavy handed unfair tactics in the future in place of normal, appropriate notice and an opportunity to be heard should new questions arise. At no time have the Plaintiffs received any notice or opportunity to be heard about how their lawfully compliant practice now suddenly violate the requirements how fetal tissue should be disposed.

ODH has inspected Plaintiffs' surgical facilities at least annually for the last decade. From time to time, ODH notified the Plaintiffs (or their predecessor) of non-compliance with regulations ODH enforces. In each occasion, ODH gave the facility notice, the factual basis for the non-compliance, and time to submit a plan of correction. ODH followed none of those steps on December 11, 2015. Instead, ODH sent Plaintiffs a letter stating that the Attorney General Charitable Law Section had completed its investigation of whether Plaintiffs have violated any Ohio charitable law and concluded that it found no indication PPPSWO or PPGOH sold fetal tissue.

On December 11, 2015, the Attorney General, for the first time, notified Plaintiffs it had also investigated fetal tissue disposal. The Attorney General informed Plaintiffs that in his view, such disposal violated O.R.C. § 3701.341 and O.A.C § 3701-47-05, both of which are enforced by ODH. The Attorney General notified Plaintiffs through the media that a lawsuit would be filed Monday December 14, 2015 seeking an injunction. The Attorney General did not provide Plaintiffs with any facts, statements, documents or proof of the alleged non-compliance or an opportunity to respond to the allegation.

On information and belief, hospitals, ASFs and various medical facilities dispose of infectious medical materials, including fetal tissue, in a manner consistent with that of the Plaintiffs. The City of Cincinnati Department of Health inspects PPSWO's compliance with infectious waste rules and has found it compliant. Prior to December 11, 2015, Defendant has never taken the position or notified anyone that *following* infectious waste rules nonetheless *violates* the fetal tissue disposal rule.

The actions of the Defendant are arbitrary. Changing the interpretation of the fetal disposal rule without notice and then taking enforcement action only against Plaintiffs and not against other medical facilities for disposing of fetal tissue in the same manner as Plaintiffs, violates Plaintiffs' right to due process and equal protection under the law. O.R.C. § 3701.341 and O.A.C. § 3701-47-05, as applied to Plaintiffs, is unconstitutionally vague and subject to arbitrary enforcement.

### III.  ARGUMENT

**A. Standard For Granting Preliminary Relief**

The standard for evaluating a request for a TRO and preliminary injunctive relief under Rule 65 is well established in this Circuit. Though there is no "rigid and comprehensive test" for determining the appropriateness of this relief, *Tate v. Frey*, 735 F.2d 986, 990 (6th Cir. 1984), the Court should consider the following four factors:

(1) Whether the party seeking the injunction has shown a substantial likelihood of success on the merits;
(2) Whether the party seeking the injunction will suffer irreparable harm absent the injunction;
(3) Whether the injunction will cause others to suffer substantial harm;
(4) Whether the public interest would be served by the preliminary injunction.

*Doe v. Barron,* 92 F. Supp. 2d 694, 695 (S.D. Ohio 1999); *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999); *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103

n.3 (6th Cir. 1991); *Women's Med. Prof'l Corp. v. Voinovich*, 911 F. Supp. 1051, 1059 (S.D. Ohio 1995), *aff'd*, 130 F.3d 187 (6th Cir. 1997).

These factors are "to be balanced and [are] not prerequisites that must be satisfied . . . . [T]hey are not meant to be rigid and unbending requirements." *McPherson v. Mich. High Sch. Athletic Ass'n*, *Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (citation omitted). The "plaintiff must show more than a mere possibility of success," but need not "prove his case in full." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 543 (6th Cir. 2007) (citations omitted). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

In this case, as thoroughly set out below and in the accompanying declarations, Plaintiffs meet the test for a TRO and preliminary injunctive relief.

**B. Plaintiffs Have Demonstrated A Substantial Likelihood Of Success On The Merits.**

Plaintiffs comply with O.R.C. § 3701.341 and the Department of Health's rule, O.A.C. § 3701-47-05, which requires that, "The fetus shall be disposed of in a humane manner." Moreover, as set out in the declarations, Plaintiffs have also at all times complied with regulations regarding the disposal of medical waste or "infectious waste" under O.A.C. §3745-27-30 (standards for generators of infectious wastes) and O.A.C. § 3745-27-32 (standards for the operation of infectious waste treatment facilities). Plaintiffs have never before been told that by *following* the infectious waste treatment regulations they are *violating* the humane disposal regulation. Defendant's sudden change with respect to his application of O.R.C. § 3701.341 and

6

O.A.C. § 3701-47-05 demonstrates that it is unconstitutionally vague, both because if fails to give adequate notice of what is required and leaves Plaintiffs subject to Defendant's arbitrary and discriminatory enforcement. Defendant's rush to an injunction and abandonment of all the standard procedures for addressing alleged ASF compliance deficiencies also support a claim for denial of equal protection.

### C. The Fetal Tissue Disposal Rule Is Unconstitutionally Vague

Vague laws are often held to violate basic principles of Due Process. The vagueness doctrine serves two goals. "First, it provides 'fair warning' so as to safeguard the innocent and, second, it avoids arbitrary applications of the law by insisting upon explicit standards regulating conduct." *Fleming v. U.S. Dep't of Agric.*, 713 F.2d 179, 184 (6th Cir. 1983) *citing Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972). A law is unconstitutionally vague unless it gives a person "of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. 108. In addition, "[t]he standards of enforcement must be precise enough to avoid 'involving so many factors of varying effect that neither the person to decide in advance nor the jury after the fact can safely and certainly judge the result.'" *Id.*

The degree of statutory imprecision that due process will tolerate varies with the nature of the enactment and the correlative needs for notice and protection from unequal enforcement. *Hoffman Estates v. Flipside*, *Hoffman Estates, Inc.*, 455 U.S. 489, 495, and fn. 7 (1982). Where the statute limits the exercise of individual freedoms affirmatively guaranteed by the United States Constitution, the vagueness standard is more stringent. *Colautti v. Franklin*, 439 U.S. 379 (1979).

7

The fetal tissue regulation's decree of "humane" disposal violates this standard. As is noted above, Plaintiffs' fetal tissue disposal follows the regulations in place for infectious medical waste. Defendant has never notified Plaintiffs that *following* the infectious medical waste laws and regulations would be proof they are *violating* the fetal tissue disposal regulation. This is exactly what Defendant is now arguing. That shift in the Director's interpretation of the fetal tissue disposal regulation – made public at a press conference with no notice to Plaintiffs or an opportunity to be heard – is a classic indicator of vagueness. No fair warning has been provided, leaving Plaintiffs subject to arbitrary and discriminatory enforcement.

Indeed, other courts have recognized that similar requirements placed on abortion providers in Ohio are unconstitutionally vague. In 1983, an Akron, Ohio ordinance required that fetal tissue be disposed of in a "humane and sanitary" manner. The Supreme Court enjoined the ordinance on its face stating:

> The phrase "humane and sanitary" does, as the Court of Appeals noted, suggest a possible intent to "mandate some sort of 'decent burial' of an embryo at the earliest stages of formation." 651 F.2d, at 1211. This level of uncertainty is fatal where criminal liability is imposed. See *Colautti v. Franklin,* 439 U.S. 379, 396, 99 S.Ct. 675, 686, 58 L.Ed.2d 596 (1979). Because § 1870.16 fails to give a physician "fair notice that his contemplated conduct is forbidden," *United States v. Harris,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954), we agree that it violates the Due Process Clause.

*City of Akron v. Akron Ctr. for Reprod. Health, Inc.,* 462 U.S. 416, 451-52, (1983).[1]

Several years after *Akron*, in *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1392 (6th Cir. 1987), the plaintiff challenged as void for vagueness a Cincinnati ordinance requiring that aborted fetuses be "interred, deposited in a vault or tomb, cremated, or otherwise disposed of in a manner approved by the Commissioner of Health." No

---

[1] Although the fetal tissue disposal rule is not criminal, it does implicate the exercise of a constitutional right. It also can lead to a state court injunction that could expose Plaintiffs to possible contempt citations. It, therefore, should be subject to heightened scrutiny. And there can be no doubt – given Defendant's abrupt change of position – that it too does not provide fair notice.

regulations were issued by the city to define what was meant by "otherwise disposed of in a manner approved by the Commissioner of Health." *Id*. at 1393. The penalty for violating the ordinance was a fine of not more than $1,000. The Sixth Circuit affirmed the grant of a preliminary injunction against enforcement of the ordinance, holding that there was a substantial probability that the plaintiff could show that the ordinance was unconstitutionally vague. *Id.* at 1399. The court based this decision on the fact that the city had issued no guidance, and thus enforcement was open to ad hoc changes in policy. *Id.*

The Ohio regulation requiring humane disposal is the same. As can be seen by Defendant's actions here, it fails both prongs of the due process guarantee. First, it fails to provide Plaintiff adequate notice of the conduct it prohibits, and second, it leaves them subject to arbitrary and discriminatory enforcement. Plaintiffs are, therefore, likely to succeed on their claim that the fetal tissue disposal rule is unconstitutionally vague.

### D. Defendants Actions Towards Plaintiffs Violate Equal Protection

Plaintiffs have been singled out for disparate treatment in violation of the Equal Protection Clause. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 970 (8th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (internal quotation marks omitted). When "an individual is being singled out by the government, the specter of arbitrary classification is fairly raised," and thus at a minimum the Equal Protection Clause requires a rational basis for the difference in treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). A law, or its enforcement, is rationally related to a government objective, in part, where "'the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'" *Armour v. City*

9

*of Indianapolis*, 132 S. Ct. 2073, 2080 (2012) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992)).

Here, Defendant has singled out Plaintiffs from other medical providers for disparate treatment. He has not said he would take action against all medical providers who dispose of fetal tissue, which includes obstetricians and gynecologists, as well as hospitals. He has also failed to follow his own process for ASF's failures to follow ODH rules. He is taking the unprecedented step of seeking an injunction in state court without offering Plaintiff a meaningful opportunity to come into compliance with claimed violations. Indeed, Plaintiffs note that Defendant has historically made substantial efforts to help license holders cure alleged license deficiencies, and has *never* sought an injunction against Plaintiffs without engaging in the ODH plan of correction process.

Defendant's actions should be judged under a heightened scrutiny standard because they were motivated by his animus towards Plaintiffs' delivery of a constitutionally protected health care service, delivery of abortion services. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (strict scrutiny applied to a classification where "state laws impinge on personal rights protected by the Constitution"); *Roe v. Wade*, 410 U.S. 113 (1973) (a woman's right to choose is protected by the guarantees of the Fourteenth Amendment).

Defendant, along with Attorney General DeWine and Governor Kasich, have made no secret of their opposition to safe, legal abortion. And their actions on December 11, 2015 do not exist in a vacuum. Indeed, Ohio has some of the most restrictive abortion laws in the country. *See* Kight Declaration. Further, attacks on Planned Parenthood have escalated nationwide in the past several months, in response to the release of heavily edited, inflammatory videos produced by an anti-abortion group last summer. Although these videos have been widely discredited,

anti-abortion politicians throughout the country have used them as an opportunity to take actions against Planned Parenthood and single it out for disparate treatment, including by trying to bar Planned Parenthood affiliates from participation in non-abortion public health programs. Fortunately, almost all of those actions have been blocked by the courts. Kight Declaration. As part of this broader pattern of attacks, five months ago Attorney General DeWine publically announced he would investigate whether Plaintiffs sold fetal tissue but did not announce until December 11, 2015, that Plaintiffs did not and do not sell fetal tissue, allowing the false impression to linger all summer and fall. When he finally announced his finding that Plaintiffs do not sell fetal tissue, he accompanied it by this new, equally unwarranted accusation. Thus, there can be no question that Defendant's current actions are motivated by animus.

However, even if rational basis applies, Defendant's actions plainly violate the Equal Protection Clause, since bare animus is not a constitutionally sufficient justification for the ODH's differential treatment of the Plaintiffs. As the Supreme Court has explained, "if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare [] desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Dep't of Agr. v. Moreno*, 413 U.S. 528, 534 (1973); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985) ("'Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.'" (citations omitted)); *Palmer v. Thompson*, 403 U.S. 217, 226, (1971) ("Citizens may not be compelled to forgo their constitutional rights because officials fear public hostility . . . ."); *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 839 F.2d 1296, 1303 (8th Cir. 1988) ("Constitutional rights are at stake here, and those rights exist (or not, as the case may be) independently of public opinion . . . 'fundamental rights[,] may not be submitted to vote; [it]

11

depend[s] on the outcome of no elections.'" (quoting *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943))).

Accordingly, numerous courts have enjoined government action targeting Planned Parenthood organizations because of the health care services they provide and their association with other abortion providers. *See Planned Parenthood of Minn. v. State of Minn.*, 612 F.2d 359, 361, *aff'd sub nom.* 448 U.S. 901 (1980) (applying *Moreno* and holding that "Planned Parenthood's unpopularity [based on its stance on abortion] played a large role" in passage of statute, and "Planned Parenthood's unpopularity in and of itself and without reference to some independent considerations in the public interest cannot justify" the statute); *Planned Parenthood Ass'n of Utah v. Herbert*, No. 2:15-cv-693-CW Doc. 12, ¶ 4 (D. Utah Sept. 29, 2015) (temporary restraining order) (finding likelihood of success on an equal protection claim where Plaintiff was "singled out based on Plaintiff's association with an organization against whom accusations have been made of illegal conduct"); *Planned Parenthood Greater Memphis Region v. Dreyzehner*, 853 F. Supp. 2d 724, 737 (M.D. Tenn. 2012) (finding likelihood of success on equal protection claim when "the Defendant acted with political motivation to defund Planned Parenthood from a federal grant program funded by the federal government"); *Planned Parenthood of Kan., Inc. v. City of Wichita*, 729 F. Supp. 1282, 1290–91 (D. Kan. 1990) (law banning contract with Planned Parenthood violates equal protection where it was "deprived of the benefit of continued access to Title X funding simply because of the reputation and unpopularity of Planned Parenthood").

The same is warranted here. The course of conduct followed by Defendant reflects arbitrary enforcement and a denial of due process and equal protection and must be enjoined. Plaintiffs have clearly shown a substantial likelihood of success on the merits.

### E. The Absence Of Injunctive Relief Will Cause Irreparable Harm

In the absence of a TRO and preliminary injunction, Plaintiffs and their patients will suffer irreparable harm. As an initial matter, the violation of Plaintiffs' constitutional rights constitutes per se irreparable harm. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (violation of right to travel interstate constituted irreparable injury); *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati,* 822 F.2d 1390 (6th Cir.1987) (finding irreparable injury where plaintiff has shown substantial likelihood of success on merits of constitutional challenge to fetus disposal regulation).

Plaintiffs and their patients will also be irreparably harmed because Defendant is threatening to take action that may prevent Plaintiffs from being able to provide abortion services.  Plaintiffs had medical waste vendors that complied with Ohio law and Defendant's actions scared one of them away.  Plaintiffs have now secured new vendors, but they are at risk of the same thing happening and being unable to continue to provide services.   Lawson Decl.; Kight  Decl.. *See NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc*., 246 F. App'x 929, 943-44 (6th Cir. 2007) (forcing plaintiff to lay-off employees because of inability to offer certain services constitutes irreparable harm); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) ("impending loss ... of ... business constitutes irreparable injury").

### F. A TRO and Preliminary Relief Will Not Cause Substantial Harm To Others, And The Public Interest Favors The Issuance Of Injunctive Relief

In contrast to the harms that Plaintiffs and their patients will face, a preliminary injunction in this case merely preserves the status quo.  Plaintiffs will continue providing

services and continue fetal tissue disposal consistent with the standards approved for decades by the Defendant. Plaintiffs have operated with ASFs licenses for years, and they have both provided abortions for far longer than that (with the fetal tissue disposal regulation in place for forty years). Permitting Plaintiffs to continue operating their ASFs in the same manner while this case proceeds will not harm Defendant Hodges or others.

Finally, preliminary injunctive relief serves the public interest. The public interest is always served by preventing the violation of constitutional rights. *See Planned Parenthood Ass'n of Cincinnati*, 822 F.2d at 1400 (holding that there was no substantial harm in preventing the enforcement of an ordinance that was likely unconstitutional). *See Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.,* 698 F.3d 885, 896 (6th Cir. 2012) ("the public interest is promoted by the robust enforcement of constitutional rights"); *see also Planned Parenthood Ass'n of Cincinnati*, 822 F.2d at 1400 (holding that the public interest was served by an injunction since "the public is certainly interested in the prevention of enforcement of ordinances which may be unconstitutional"). Ensuring continued access to constitutionally protected health care services is also undoubtedly in the public interest. *See Barron*, 92 F. Supp. 2d 694, 697 (S.D. Ohio 1999) (holding that the public interest was served by a temporary restraining order that would permit the plaintiff to access abortion services since "it is in the public's interest to uphold" "a woman's right to choose to terminate her pregnancy").

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant their motion for a temporary restraining order and preliminary injunction.

Respectfully submitted,

/s/ William G. Porter
William G. Porter (0017296)
Kimberly W. Herlihy (0068668)
Martha Brewer Motley (0083788)
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street
Columbus, Ohio 43215
(614) 464-5448
(614) 719-4911 fax
wgporter@vorys.com
kwherlihy@vorys.com
mbmotley@vorys.com
*Attorneys for Plaintiffs Planned Parenthood of Greater Ohio*

/s/Alphonse A. Gerhardstein
Alphonse A. Gerhardstein# 0032053
*Trial Attorney for Plaintiffs*
Jennifer L. Branch #0038893

GERHARDSTEIN & BRANCH CO. LPA
432 Walnut Street, Suite 400
Cincinnati, Ohio 45202
 (513) 621-9100
 (513) 345-5543 fax
agerhardstein@gbfirm.com
jbranch@gbfirm.com
*Attorneys for Plaintiffs Planned Parenthood Southwest Ohio Region*

Helene T. Krasnoff
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, D.C. 20005
(202) 973-4800
(202) 296-3480 (fax)
carrie.flaxman@ppfa.org

Jennifer Sandman
Planned Parenthood Federation of America
434 W. 33rd Street
New York, N.Y. 10001
Telephone: 212-261-4749
Facsimile: 212-247-6811
Email: jennifer.keighley@ppfa.org

*Co-counsel for Plaintiffs
Applications for admission pro hac vice forthcoming*